UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

**CIVIL ACTION NO. 4:05CV-3-M**
**(Consolidated with 4:04CV-178-M)**

**HENRIETTA GAIL LAWLESS**, as Administratrix
of the Estate of Danny Roger Lawless                                               **PLAINTIFF**

**V.**

**METHODIST HOSPITAL and**
**ROBERT L. FAWCETT, M.D.**                                                       **DEFENDANTS**

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on a motion by Defendant, Methodist Hospital, for summary judgment [DN 23]. Plaintiff brought this action against Methodist Hospital asserting a state-law medical malpractice claim, as well as a cause of action for a violation of the Emergency Medical Treatment and Active Labor Act. Fully briefed, this matter is ripe for decision. For the reasons set forth below, the motion by Defendant, Methodist Hospital, for summary judgment is **granted**.

**I. FACTS**

On October 22, 2003, decedent Danny Lawless (hereinafter "Mr. Lawless") was brought to the emergency room of Defendant, Methodist Hospital, by his family because he was having difficulty breathing. Upon arrival into the emergency room lobby, Mr. Lawless collapsed to his knees and the triage nurse came out to see what had happened. Mr. Lawless stood back up, and the triage nurse put Mr. Lawless in a wheel chair and took him to the trauma room. The hospital chart for Mr. Lawless was marked as "Emergency." Dr. Robert

Fawcett was called to the trauma room. Dr. Fawcett asked Mr. Lawless whether he had food stuck in his throat, Mr. Lawless indicated no, and then, Mr. Lawless collapsed onto the bed.

Dr. Fawcett immediately began to intubate Mr. Lawless. According to Dr. Fawcett, when he initially began the intubation, the scope light on the laryngoscope would work; however, when he would put pressure on it to lift up the back of the throat, the scope light would short out. Ultimately, Dr. Fawcett was unable to intubate Mr. Lawless. Respiratory therapist, Shannon Gibson, was paged to the emergency room. When she arrived she testified that chest compressions were being performed and oxygen was being administered to Mr. Lawless through an ambu bag. According to hospital records and the testimony of Dr. Fawcett, the first intubation occurred at 2201 hours. According to the medical chart, Dr. Fawcett did not attempt to intubate Mr. Lawless again until 2206 hours. After the second unsuccessful attempt at intubation, Dr. Fawcett asked respiratory therapist, Shannon Gibson, to intubate Mr. Lawless. Dr. Fawcett also sent a nurse to obtain a cricothyrotomy kit which would be used to cut Mr. Lawless's throat to secure an airway. According to the medical chart, Mr. Lawless was successfully intubated at 2213.[1] Dr. Fawcett continued to work on Mr. Lawless, including CPR, administration of medication and electric shocks to his heart until Dr. Fawcett ended the Code and pronounced Mr. Lawless's death at 2259.

In December of 2004, Plaintiff filed a medical negligence claim against Dr. Robert

---

[1] While not an issue in the present motion for summary judgment, Dr. Fawcett disputes the accuracy of the times and some of the other information contained in the medical chart. Specifically, Dr. Fawcett maintains that Mr. Lawless was intubated within six minutes of entering the trauma room.

Fawcett based on diversity jurisdiction. Plaintiff asserts that the documented thirteen (13) minute delay in intubating Mr. Lawless caused his death. In January of 2005, Plaintiff filed this current action against Methodist Hospital alleging both a medical negligence claim and a violation of the Emergency Medical Treatment and Active Labor Act ("EMTALA"), 29 U.S.C. § 1395dd. Upon motion by Dr. Fawcett, his case was consolidated into this action in June of 2005. Defendant, Methodist Hospital, now moves for summary judgment on Plaintiff's EMTALA and medical negligence claims arguing that (1) there is no evidence in the record to support Plaintiff's claim under EMTALA and (2) Plaintiff has failed to produce any expert witnesses alleging that Methodist Hospital's treatment of Danny Lawless deviated from the standard of care or proximately caused his death.

## II. STANDARD OF REVIEW

In order to grant a motion for summary judgment, the Court must find that the pleadings, together with the depositions, interrogatories and affidavits, establish that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. The moving party bears the initial burden of specifying the basis for its motion and of identifying that portion of the record which demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

Although the Court must review the evidence in the light most favorable to the non-

moving party, the non-moving party is required to do more than simply show that there is some "metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd., v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The Rule requires the non-moving party to present "*specific facts* showing that there is a *genuine* issue for trial." Fed. R. Civ. P. 56(e) (emphasis added). Moreover, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Anderson, 477 U.S. at 252.

### III. DISCUSSION

### A. EMTALA

#### *Overview*

In 1986, Congress enacted EMTALA to prevent hospitals "from dumping patients, who lack insurance to pay for their claims, by either refusing treatment or transferring them to other hospitals." Thornton v. Southwest Detroit Hosp., 895 F.2d 1131, 1132 (6th Cir. 1990). "Courts have universally recognized that EMTALA was not conceived as a federal medical malpractice statute." Morgan v. North Mississippi Medical Center, Inc., 403 F. Supp. 2d 1115, 1124 (S.D. Ala. 2005)(citing Nolen v. Boca Raton Community Hosp., Inc., 373 F.3d 1151, 1154 (11th Cir. 2004); Harry v. Marchant, 291 F.3d 767, 772 (11th Cir. 2002)(en banc)("EMTALA was not intended to establish guidelines for patient care, to replace available state remedies, or to provide a federal remedy for medical negligence." Id. at 773).

EMTALA requires hospitals to satisfy two distinct obligations, commonly referred

to as the "appropriate medical screening requirement" and the "stabilization requirement." Harry, 291 F.3d at 770. "The appropriate medical screening requirement obligates hospital emergency rooms to provide an appropriate medical screening to any individual seeking treatment in order to determine whether the individual has an emergency medical condition." Id. at 770; 42 U.S.C. § 1395dd(a). If an emergency medical condition exists, the hospital is then "required to provide 'such further medical examination and such treatment as may be required to stabilize the medical condition' or 'transfer . . . the individual to another medical facility' in accordance with EMTALA requirements." Morgan, 403 F. Supp. 2d at 1124; 42 U.S.C. § 1395dd(b)(1).

Plaintiff's EMTALA claim alleges a violation of the stabilization requirement.[2] (Complaint at ¶ 7.) Specifically, Plaintiff alleges that Defendant Methodist Hospital violated the EMTALA by failing to stabilize and treat Mr. Lawless's emergency medical condition, by failing to provide staff competent to stabilize Mr. Lawless's emergency condition, by failing to provide medical equipment in proper working condition, and by failing to have a cricothyrotomy kit located in the trauma room. Defendant moves for summary judgment on Plaintiff's EMTALA claim arguing that because Mr. Lawless was neither transferred nor discharged from Methodist Hospital, the stabilization requirement was not triggered.

---

[2] In as much as Plaintiff attempts to assert an appropriate medical screening requirement claim, that claim fails because Plaintiff has failed to present any evidence that Methodist Hospital engaged in disparate treatment of Mr. Lawless in the hospital's screening process. Nolen v. Boca Raton Community Hosp., Inc., 373 F.3d 1151, 1155 (11th Cir. 2004)("So long as the Hospital gave to [the plaintiff] the same quality screening that it would have given a similarly situated outpatient, there is no violation of the EMTALA."). In fact, Plaintiff has failed to present any evidence that the screening provided by the hospital was somehow inadequate.

5

Plaintiff disagrees arguing that EMTALA requires neither transfer nor discharge to state a claim against a hospital for a violation of the stabilization requirement. Therefore, the issue before this Court is the extent to which EMTALA requires a hospital to provide stabilization treatment to a patient with an emergency medical condition who is not transferred or discharged.

### *Stabilization Requirement*

The stabilization requirement of the EMTALA provides:

> If any individual (whether or not eligible for benefits under this subchapter) comes to a hospital and the hospital determines that the individual has an emergency medical condition, the hospital must provide either--
> (A) within the staff and facilities available at the hospital, for such further medical examination and such treatment as may be required to stabilize the medical condition, or
> (B) for transfer of the individual to another medical facility in accordance with subsection (c) of this section.[3]

42 U.S.C. § 1395dd(b)(1). The statute further defines the term "to stabilize" as "to provide such medical treatment of the condition as may be necessary to assure, within reasonable medical probability, that no material deterioration of the condition is likely to result from or occur *during the transfer* of the individual from a facility . . . ." 42 U.S.C. § 1395dd(e)(3)(A)(emphasis added). "Transfer" is defined as "the movement (including the discharge) of an individual outside a hospital's facilities . . . ." 42 U.S.C. § 1395dd(e)(4). Applying the Act's definition of "to stabilize" and "transfer" to the § 1395dd(b)(1)

---

[3]Subsection (c) sets forth procedures for transferring patients who are not stabilized. 42 U.S.C. § 1395dd(c).

stabilization requirement, the Court finds that EMTALA clearly mandates stabilization of an individual only in the event of a transfer or discharge.[4] Harry, 291 F.3d at 771; Morgan, 403 F. Supp.2d at 1127. See also Cherukuri v. Shalala, 175 F.3d 446, 450 (6th Cir. 1999); Card v. Amisub (SFH) Inc., 2006 WL 889430, *2 (W.D. Tenn. March 30, 2006).

Given the clear language of the statute, the Court concludes that EMTALA does not impose a federal statutory obligation on a hospital to provide stabilization treatment to a patient with an emergency medical condition who is neither transferred or discharged. This construction is consistent with the interpretation of the stabilization requirement reached by other courts. See Harry, 291 F.3d at 772 ("To give effect to the clear language of the statute, we must conclude the triggering mechanism for stabilization treatment under EMTALA is transfer."); Morgan, 403 F. Supp. 2d at 1128; Kizzire v. Baptist Health Systems, Inc., 343 F. Supp. 2d 1074, 1084 (N.D. Ala. 2004), aff'd, 441 F.3d 1306 (11th Cir. 2006); Williamson v. Roth, 120 F. Supp. 2d 1327, 1334 (M.D. Fla. 2000); Pagan-Pagan v. Hospital San Pablo, Inc., 97 F. Supp. 2d 199, 203 (D. Puerto Rico 2000)(Plaintiff's "death while being treated at [the hospital] precludes the possibility of EMTALA liability as no transfer or release was ordered prior to being stabilized." Id. ). See also Cleland v. Bronson Health Care Group, Inc., 917 F.2d 266, 268 (6th Cir. 1990).

---

[4]While not an issue in the present case, the Sixth Circuit has also held that "[h]ospitals may not circumvent the requirements of the Act merely by admitting an emergency room patient to the hospital, then immediately discharging that patient." Thornton v. Southwest Detroit Hosp., 895 F.2d 1131, 1135 (6th Cir. 1990). The record reflects that Mr. Lawless was never admitted into the hospital.

In the instant case, upon his arrival at the emergency room, Mr. Lawless presented with an emergency condition and the medical staff knew of this condition. Dr. Fawcett testified that Mr. Lawless was treated as an emergency situation at all times. The record further reflects that at no time did the medical staff state an intention to transfer or discharge Mr. Lawless. Ms. Lawless concedes in her deposition that no medical personnel, physician or nurse ever told her that they were going to transfer or dismiss Mr. Lawless. (Henrietta Lawless Dep. at 90-91.)  Further, it is uncontested that Mr. Lawless died during treatment at Methodist Hospital. For these reasons, the Court finds that because Mr. Lawless was not transferred or discharged, Plaintiff's EMTALA stabilization requirement claim fails to state a valid cause of action and summary judgment is proper.

## B.  MEDICAL MALPRACTICE

Defendant moves for summary judgment on Plaintiff's state law medical malpractice claim arguing that Plaintiff has failed to produce any expert witnesses to support Plaintiff's claim that Methodist Hospital's treatment of Danny Lawless deviated from the standard of care or proximately caused his death.

Under Kentucky law, "in order to prevail in a medical malpractice suit, a plaintiff must prove the following two elements: (1)[t]hat the challenged treatment was a deviation below the applicable standard of care required and expected of a reasonably competent practitioner; and (2)[t]hat the alleged negligent act proximately caused the claimed injury." Vance v. United States, 1999 WL 455435, * 6 (6th Cir. June 25, 1999)(citations omitted). See also Reams v. Stutler, 642 S.W.2d 586, 588 (Ky. 1982); Blair v. Eblen, 461 S.W.2d 370,

373 (Ky. 1970). "Except in limited factual circumstances the plaintiff in a medical negligence case is required to present expert testimony that establishes the standard of care and skill expected of a reasonably competent medical practitioner and that the alleged negligence proximately caused an injury." Dunn v. Norton Hosp., 2004 WL 2315718, *1 (Ky. App. Oct. 15, 2004); Perkins v. Hausladen, 828 S.W.2d 652 (Ky. 1992); Baker v. Saint Joseph Healthcare, Inc., 2005 WL 327133, *2 (Ky. App. Feb. 11, 2005); Vance, 1999 WL 455435, *6. "The opinion of the expert must be based on reasonable medical probability, not speculation or possibility." Dunn, 2004 WL 2315718, *1.

Kentucky recognizes two exceptions to the expert witness rule in medical malpractice cases. Baker, 2005 WL 327133, *3; Perkins, 828 S.W.2d at 655. "Both exceptions involve the application of the *res ipsa loquitur* doctrine and permit the inference of negligence even in the absence of expert testimony." Baker, 2005 WL 327133, *3 (citing Perkins, 828 S.W.2d at 654). Kentucky courts have described the exceptions as follows:

> One exception involves a situation in which [] "any layman is competent to pass judgment and conclude from common experience that such things do not happen if there has been proper skill and care;" illustrated by cases where the surgeon leaves a foreign object in the body or removes or injures an inappropriate part of the anatomy. The second occurs when "medical experts may provide a sufficient foundation for *res ipsa loquitur* on more complex matters." Id. at 655 (quoting Prosser and Keeton on Torts, Sec. 39 (5th ed.1984)). [] An example of the second exception would be the case in which the defendant doctor makes admissions of a technical character from which one could infer that he or she acted negligently. See id.

Baker, 2005 WL 327133, *3 (citing Perkins, 828 S.W.2d at 655).

9

### *Laryngoscope*

Plaintiff claims that Dr. Fawcett's intubation equipment, a device called a laryngoscope, provided by Methodist Hospital malfunctioned. According to the Plaintiff, the light on the laryngoscope did not work, preventing Dr. Fawcett from visualizing the area of Lawless's throat necessary for intubation. Plaintiff asserts that this equipment is checked daily by the nurses, but this particular piece of equipment was not noticed to be malfunctioning or not checked. As noted above, Plaintiff argues that Methodist failed in its duty by not having the tools necessary for doctors and nurses to save Lawless's life in a working condition.

Expert testimony is necessary to support Plaintiff's claim that Methodist Hospital deviated from the standard of care regarding the maintenance of equipment, specifically the laryngoscope. Plaintiff has not argued, nor does the Court find, that any exceptions to the expert witness rule applies in the present case. The Court does not believe that the average layperson possesses the knowledge and experience to know if Methodist Hospital deviated from the standard of care regarding the maintenance of the laryngoscope. Further, neither Dr. Fawcett nor any representative from Methodist Hospital made admissions of a technical character from which negligence or causation on the part of Methodist Hospital could be inferred. While Dr. Fawcett testified that the scope light on the laryngoscope did not work properly, he also testified that the fact that the scope light on the laryngoscope didn't make contact during the attempted intubations did not cause or contribute to Mr. Lawless's death. (Fawcett Dep. at 117.) In fact, when asked about the hospital's procedure for maintaining

equipment in proper working condition, Dr. Fawcett testified that the nurses check the equipment daily, but they would not have been aware of a malfunction with the scope light because it worked during the initial phase of the intubation. (Id. at 94.) Finally, Plaintiff's only standard of care expert witness, Dr. C.T. Fletcher, did not offer any testimony regarding the laryngoscope.

For these reasons, the Court finds that Plaintiff has failed to any present evidence that Methodist Hospital deviated from the standard of care regarding the maintenance of the laryngoscope or that the laryngoscope was the cause of Mr. Lawless's death. Summary judgment is therefore proper on this claim.

### *Cricothyrotomy Kit*

After two attempts at intubation were unsuccessful, Dr. Fawcett sent a nurse to get a cricothyrotomy kit which would open Lawless's throat and create an airway. The cricothyrotomy kit was not kept in Lawless's treatment room. Plaintiff asserts that his expert, C.T. Fletcher M.D., opined that a cricothyrotomy kit should be kept in the treatment room or on a cart just outside the room. (C.T. Fletcher Dep. at 89-92.) During his deposition, Dr. Fawcett testified that the cricothyrotomy kit was located 25 feet from the trauma room. (Fawcett Dep. at 117.) Plaintiff's expert, Dr. Fletcher, testified that he has no criticism of the placement of the cricothyrotomy kit 25 feet away from the trauma room. (Fletcher Dep. at 92.) Plaintiff has not put forth any evidence to contest Dr. Fawcett's estimate regarding the distance the kit was located from the trauma room. As a result, there is no evidence that Methodist Hospital or its employees' treatment of Mr. Lawless was below the applicable

11

standard of care with regard to the location of the cricothyrotomy kit. For these reasons, summary judgment is proper.

## IV.  CONCLUSION

For the reasons set forth above, the motion for summary judgment by Defendant, Methodist Hospital, on Plaintiff's EMTALA claim and medical malpractice claim [DN 23] is **granted**.

cc: counsel of record